```
 1                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2

 3     United States of America,      ) Criminal Action
                                      ) No. 21-mj-609
 4                    Plaintiff,      )
                                      ) DETENTION HEARING
 5     vs.                            )
                                      ) Washington, DC
 6     Raymond Glover,                ) September 23, 2021
                                      ) Time:  2:12 p.m.
 7                    Defendant.      )
       _____
 8
                     TRANSCRIPT OF DETENTION HEARING
 9                           HELD BEFORE
                 THE HONORABLE JUDGE ZIA M. FARUQUI
10                 UNITED STATES MAGISTRATE JUDGE

11     _____

                       A P P E A R A N C E S
12
       For the Plaintiff:       April Russo
13                              Assistant United States Attorney
                                555 Fourth Street, NW
14                              Washington, DC  20001
                                (202) 252-1717
15                              Email:  April.russo@usdoj.gov

16     For the Defendant:       Jose German
                                Assistant Federal Public Defender
17                              625 Indiana Avenue, NW
                                Suite 550
18                              Washington, DC  20004
                                (202) 208-7500
19                              Email:  Jose_german@fd.org

20     Probation Officer:       John Copes

21     Proceedings reported by audio recording.

22     _____

       Transcribing Court Reporter:
23                              Janice Dickman, RMR, CRR, CRC
                                Official Court Reporter
24                              United States Courthouse, Room 6523
                                333 Constitution Avenue, NW
25                              Washington, DC  20001
                                202-354-3267
```

1          THE COURTROOM DEPUTY:  This is magistrate case

2  21-609, the *United States of America versus Raymond Glover*.

3  The defendant is present by video.  And this matter is set for

4  a detention hearing.

5          Parties please introduce yourselves for the record,

6  starting with the government.

7          MS. BLACKWELL:  May it please the Court, Assistant

8  United States Attorney Jennifer Blackwell, standing in for AUSA

9  April Russo today.

10         MR. GERMAN:  Good afternoon, Your Honor.  Jose German

11  on behalf of Mr. Glover.

12         PRETRIAL SERVICES:  Shay Holman, pretrial services.

13         THE COURT:  Thank you very much, everybody.

14         Mr. German, if you can first confirm that your client

15  is willing to proceed by audio and video for this hearing?

16         MR. GERMAN:  He is, Your Honor.  We have no objection

17  to proceeding via video today.

18         THE COURT:  Thanks so much.

19         Mr. Glover, this is Judge Faruqui.  Can you hear me?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Okay.  Great.  Just like yesterday, we're

22  going to be talking to the lawyers, I'll be hearing from them,

23  I'll hear from the government's lawyer, from the

24  court-appointed lawyer, pretrial services.  If you have any

25  questions or concerns, I'll make sure, before I make any

1   decisions, I hear from you, or give you an opportunity to speak

2   to Mr. German, put you in a breakout room.  Okay?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Okay.  Now, in the interim, there's

5   substantial feedback.  If everyone else is on mute -- unless

6   you're speaking, press mute on the screen there, if you see an

7   icon or something, a button you can press.

8              THE DEFENDANT:  Yes.

9              THE COURT:  Okay.  Great.  Thank you so much.  Great.

10   Ms. Blackwell, if you want to proceed with your proffer as to

11   your requested basis for detention and reasons why.

12              MS. BLACKWELL:  Thank you, Your Honor.  AUSA April

13   Russo filed a memoranda last night addressing the four factors.

14   I would just like to highlight a few of those, Your Honor, but

15   I largely reference the memo that's on the record.

16              The facts in this case are fairly clear.  This is a

17   presumption case; that is, that there is a presumption of

18   dangerousness because of the type of felony that the defendant

19   is accused of.

20              He is believed to have been engaging in this very

21   activity when the agents actually hit the door on September

22   21st during the course of the search warrant.  He admitted to

23   much of this conduct.  He's been a member of these various

24   social media groups, including Platform A, regarding the

25   receipt and sharing of child pornography.  The images that the

1  agents witnessed when they actually went in the door were quite

2  graphic in nature and involved infant rape and penetration.

3      With respect to the weight of the evidence, as I

4  indicated, Your Honor, it is quite significant in this case.

5  Not only did the defendant admit to some of this conduct, but

6  there were no less than 25 images that were found on his phone,

7  as well as on his Google Share Drive.

8      This conduct has been very long in nature.  It has

9  been continuing at least since early 2020 up until, in fact,

10  two days ago.

11      And with respect to the defendant's dangerousness,

12  Your Honor, the defendant does have children.  And it is the

13  government's belief, based on comments that the defendant made,

14  that at least two of his children he has been prohibited from

15  seeing.  They are ten years old.  We do not have any further

16  details about that, other than the defendant admitted that he

17  is not allowed to see them.

18      He did indicate that he was a "true dad" in chats

19  with other pedophiles.  And in fact -- so, in that respect,

20  Your Honor, this goes beyond just mere -- even if could be

21  defined as "mere" possessing, sharing and receiving sexually

22  explicit pictures of young children being brutally raped, but

23  also that he's communicating with like-minded individuals and

24  references that he is a "true dad."

25      There is a day care that is in the building in which

1      he currently resides.  And we do believe that under these

2      factors there are no set of circumstances that could be set

3      forth that would ensure the safety of the community in this

4      case.

5              I will also note one further fact for the record:

6      There are two defendants that are believed to be a part of this

7      organization that the defendant was a part of; they are both

8      detained currently.  Thank you, Your Honor.

9              THE COURT:  Thanks so much, Ms. Blackwell.  Miss

10     Holman anything to add from pretrial services in refer to the

11     report and facts stated there?

12             PRETRIAL SERVICES:  No, Your Honor, nothing to add.

13     We would defer to our original report.

14             THE COURT:  Thank so much.

15             Mr. German, I'm happy to hear from you.

16             MR. GERMAN:  Thank you, Your Honor.  Your Honor, I

17     want to start with some simple but yet critical facts that go

18     to the very heart of the question that we are supposed to be

19     answering here today:  Whether there are conditions that can be

20     put in place in order to facilitate Mr. Glover's release.  And

21     I know it's an obvious point, but I want to be clear, that is

22     the only question here.  This is not a trial, the government

23     has not produced any witnesses for cross-examination.  And,

24     actually, none of their evidence has been put to the test or

25     scrutinized in any way.

1          With that in mind, let me just say a few things about

2     who is actually before the Court here today.

3          Mr. Glover comes before the Court as a 41-year-old

4     man who, as far as I can tell, does not have so much as an

5     arrest on his record.  He comes before the Court as someone who

6     has held a job as a federal employee with the Department of

7     Agriculture for two decades.  He comes before the Court as a

8     father of three children, including a 14-year-old who is

9     turning 15 today.  And this is actually one of the things that

10    is devastating Mr. Glover the most, the fear that he won't be

11    able to see his son today and be able to give him his gift.

12          This is someone who is an active member of his church

13    and through his church has done a number of things, such as

14    volunteering with organizations like Bread for the City, and

15    other organizations like it.  And, of course, as Your Honor can

16    see in the letters that we submitted, Mr. Glover is a person

17    who is loved by those who know him.  And while we would have

18    wanted to have even more letters, unfortunately, time

19    constraints often present limitations for that.

20          But I can tell the Court that it's not just

21    Ms. Contee and Mr. Davis, Mr. Glover has an incredible support

22    system.  Multiple people have offered to not just open up their

23    homes, but also serve as third-party custodians, something that

24    people are not always willing to do unless they know -- you

25    know, we're talking about somebody they really care about; that

1     is the person that is before the Court here today.

2          Now, with respect to the actual allegations here, I

3     know that when we look at this detention memo, there's a lot

4     there.  There's a lot of information and, because of that, I

5     think it's important to parse through it and really be clear

6     about what is being alleged and what is not being alleged.

7          One thing that I find troubling is that the

8     government is trying to make this connection -- and it is

9     something they often do in these types of cases -- and that is

10    that they're trying to connect a line between viewing online

11    content and having contact with someone who is under the age.

12         Now, that's fine if there is something to support

13    that.  But, here, despite the paragraphs upon paragraphs about

14    what other folks may be doing, there is nothing, absolutely

15    nothing to support an allegation that Mr. Glover has or ever

16    will have inappropriate contact with an underage person.  And

17    what the data and science is telling us about this is when all

18    we have is an allegation of viewing content online, that does

19    not necessarily translate into inappropriate contact.  And I

20    think that is very -- a very important distinction between --

21    for the Court to make here and to consider as it thinks through

22    the question that we're here to answer.

23         Now, the other thing we have is the rebuttable

24    presumption.  And before I even get into that, I just want to

25    point something out, because by now -- now, we know that, you

 1    know, any honest study or report about, you know, the criminal

 2    justice system and the problems within it, the one thing that

 3    they frequently cite, you know, as being something that goes to

 4    the heart of the -- of a lot of these issues is the

 5    prosecution's charging decisions.  And here the government has

 6    chosen to charge the receipt offense, which means that at a

 7    trial, you know, maybe a year from now, if that, the government

 8    will have to prove that Mr. Glover was knowingly in receipt of

 9    this.  An element that is not always as straightforward as the

10    government will have us think.  And, you know, maybe they will

11    be able to prove that or maybe they won't.

12             What we do know, and what we're sort of stuck with

13    between now and when we find out whether they're able to prove

14    that, is that the receipt carries a mandatory minimum, the

15    possession does not.  The receipt also carries the rebuttable

16    presumption, where the possession does not.  And we often hear

17    that because of these issues prosecutors are going to exercise

18    more discretion and they'll be more intentional about their

19    charging decisions, especially in cases like this.  But here

20    where, you know, given the -- the choice of just charged the

21    possession -- which, frankly, based on the allegations, at

22    least to me, is probably the more appropriate charge -- they

23    chose to tack on the receipt, which they know has significantly

24    more severe consequences.

25             I bring this up only to say, you know, we can't just

1    pretend that the government does not have a hand in creating a

2    space where they can claim this rebuttable presumption.  That

3    being said, as I'm sure Your Honor has heard a number of times,

4    this rebuttable presumption does not put a heavy burden on us,

5    and that's for good reason.  And when we have a 41-year-old

6    person without any criminal history whatsoever, who has a

7    20-year track record at their job and has an incredible support

8    system, I think that presumption is easily rebutted.  And then

9    we're right back to trying to figure out what conditions can

10   accommodate Mr. Glover's release.

11            And, you know, here we are prepared to propose

12   probably the most strictest conditions that we can imagine.  We

13   submitted two names to pretrial services, one Mr. Shawn Contee,

14   who is Mr. Glover's cousin, and Ms. Sarita Contee, who is also

15   Mr. Glover's cousin.  Both of those parties have offered to

16   have Mr. Glover in their homes and serve as pretrial

17   custodians.

18            Now, pretrial services has determined that they

19   cannot be third-party custodian.  I believe Mr. Contee has a

20   criminal history.  I will point out, Your Honor, that as far as

21   I can tell -- I don't know if pretrial has additional

22   information -- but as far as I can tell, his last arrest is

23   from over a decade ago.  So, I don't know that that should

24   necessarily inform whether or not he can serve as a third-party

25   custodian now.  And for -- as for Ms. Contee, she has children

1    in the home and pretrial, for that reason, has determined that

2    she is not eligible.

3          I will point out that Ms. Contee, being the mother of

4    these children, has made clear, incredibly clear that she is

5    willing to take Mr. Glover in her home and serve as a

6    third-party custodian, that she has no reason to believe that

7    her children would be in danger.  She has also further stated

8    that she is at home 24 hours a day, essentially, and her

9    husband is also at home 24 hours a day.  So they would have no

10   issue with having him in the home.

11         So those are the conditions that we are proposing,

12   Your Honor.  Either -- we would -- our preference would be for

13   Mr. Glover to reside with Mr. Shawn Contee as a third-party

14   custodian.  I will point out that Mr. Contee has no computers

15   in his home.  He does have a cell phone.  That phone is easily

16   password protected.  And he is willing to submit sworn

17   testimony that Mr. Glover would have absolutely no contact with

18   that phone or any other internet-capable device.

19         So, we are also proposing, Your Honor, 24-hour home

20   confinement with GPS monitoring.  Which, again, I think these

21   are all very, very strict conditions, Your Honor, that easily

22   meet the reasonable assurance standards.

23         So for all these reasons, Your Honor, we are asking

24   that you place Mr. Glover in the third-party custody of

25   Mr. Shawn Contee.  Or, if not, then Ms. Sarita Contee, Your

1     Honor.

2                 PRETRIAL SERVICES:  Your Honor, this is Ms. Holman,

3     pretrial services.

4                 THE COURT:  Go ahead, Ms. Holman.

5                 PRETRIAL SERVICES:  As explained to Mr. German,

6     Mr. Shawn Contee is ineligible due to his extensive criminal

7     history.  He was last arrested August 2012 and then November

8     2010.  And his probation for those two cases just ended -- I'm

9     sorry, the probation for 2009 and the 2010 case, which were

10    D.C. cases, just ended in 2017.  And he had another pending

11    case in Virginia, that was a driving while intoxicated charge.

12    But, Your Honor, those cases were distribution of a controlled

13    substance, where he was found guilty, and attempted

14    distribution of a controlled substance.  He has an extensive

15    history of other charges.  Those were the two most recent, the

16    others were dismissed.  A lot of dismissals, but arrests,

17    leading back to 1998.

18                 And in reference to Ms. Contee, as Mr. German

19    indicated, she has children in the home.  She does not have a

20    criminal record, but we do not find her eligible because she

21    has children in the home.  I understand that he's saying that

22    there's someone in the home 24 hours a day, but we still do not

23    feel that is secure enough.

24                 And I would remind the Court that pretrial does not

25    have the capability to monitor any internet devices, such as

1    cell phones, laptops, or TVs that have internet capability.

2    So, we do not see that there are any conditions or combination

3    of conditions that can safely secure the community upon the

4    defendant's return to court.

5         THE COURT:  Thank you, Ms. Holman.

6         Mr. German, go ahead.  Do you have something you

7    wanted to add?

8         MR. GERMAN:  I just wanted to add a couple things,

9    Your Honor, with respect to Shawn Contee, Mr. Glover's cousin.

10         THE COURT:  I'm not too worried about -- I mean, your

11    points make sense to me.  I understand, Ms. Holman, I

12    appreciate what you're saying.  And, I mean, ultimately

13    pretrial makes their own determinations, but I feel like if

14    someone hasn't been convicted for something, let alone arrested

15    in ten years, that's a long time, Mr. German.  So I don't know

16    if you need to add anything.  I don't think that's where my

17    decision -- where I'm at, most focused on.  That doesn't

18    trouble me, that his -- that's a long time.

19         MR. GERMAN:  I mean, given that, Your Honor, I am

20    also happy to address any concerns that the Court may have that

21    were not addressed at this point.

22         THE COURT:  Do you know how old Ms. Contee -- the

23    children in her residence are, Mr. German?  If you don't, it's

24    not a super --

25         MR. GERMAN:  I believe, Your Honor, they are six and

1    eight years old, Your Honor.

2              THE COURT:  I think -- here's where I am.

3    Mr. Glover, is there anything -- do you need a moment to speak

4    to Mr. German?  Do you feel like we've heard everything we need

5    to hear?  As you can tell, Mr. German is a very good lawyer, he

6    got out a lot of facts.  I mean, important information.  But,

7    if you want to be heard, I'm always happy to hear from you, but

8    I want you to talk to Mr. German first.  I don't want you to

9    say anything that could jeopardize your defense.

10             THE DEFENDANT:  I just want to --

11             THE COURT:  I want to be clear, I want to make sure

12   you don't feel like you're not getting your voice heard,

13   Mr. Glover, because it's your life.

14             THE DEFENDANT:  I did hear something -- I'm sorry.

15             THE COURT:  Yeah, no, I'm just saying it's your life.

16   That's it.  Go ahead.

17             (Overlapping speakers.)

18             THE COURT:  Mr. Glover, what I was saying is, if you

19   want to talk to Mr. German --

20             THE DEFENDANT:  I was trying to say yes, there's

21   something I wanted to ask him a question about.

22             THE COURT:  Okay.  Great.  So, Ms. Lavigne-Rhodes, if

23   you can put Mr. German and Mr. Glover into a breakout room.

24   And then whenever you're ready -- and, Mr. Glover, anything

25   else you think you might want to say, you got to tell

1     Mr. German first, you know; he's the gatekeeper of it.

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Okay.  Thank you.  Okay.  Ms. Blackwell,

4     we'll go off camera.  I will, as well.

5                    MS. BLACKWELL:  Thank you.

6                    (Pause.)

7                    MR. GERMAN:  Thank you, Your Honor.

8                    THE COURT:  It takes a minute to get it back.

9                    MS. BLACKWELL:  And, Your Honor, I had a few

10    comments, if I could, as well.

11                   THE COURT:  Yeah, sure.  Wait one moment,

12    Ms. Blackwell; just wait.

13                   MS. BLACKWELL:  Thank you.

14                   THE COURT:  Sure.  Ms. Lavigne-Rhodes, did you close

15    the breakout room or did he just hang up, or what --

16                   THE COURTROOM DEPUTY:  No.  Let's see.  It may take a

17    second for him to come back.

18                   THE COURT:  Yeah, thank you.

19                   There we go.

20                   Okay.  Mr. Glover, you're back.  You're on mute.  If

21    you could unmute and let me know, is there anything -- you had

22    a chance to speak to Mr. German.  I am now going to speak to

23    him and then I'll come back to you.

24                   So, Mr. German, is there anything you want to add or

25    is there anything you're comfortable having your client say?

1      MR. GERMAN:  I prefer to add it, Your Honor.  There

2   was a clarification that Mr. Glover did want to make.  The

3   government mentioned that he said, apparently, that he was not

4   able to have contact with his children, and that is not

5   entirely accurate.  What he'd meant was because of COVID he was

6   not seeing his children.  But he is constantly in communication

7   with them via video and things of that nature.  Today,

8   basically, what they were going to do was just, you know -- he

9   was going to provide the gift and then leave, just to make sure

10  that everybody is safe.  But that is what he meant.  Not that,

11  you know, there was some other, you know, reason why.

12      THE COURT:  Got it.  Okay.

13      MR. GERMAN:  And I would just -- Your Honor, just one

14  thing I do want to point out briefly.  You know, the fear that

15  I always have here is there is this idea that, you know,

16  because of the nature of the offense, there's just no way that

17  someone can be released.  And I just want to be very clear,

18  that is not what the Bail Reform Act envisions, that is not

19  what the law is, Your Honor.  There is no de facto detention in

20  a case involving these types of allegations.  So there has to

21  be some type of conditions that can be put in place where, you

22  know, we can meet the reasonable -- reasonable assurance

23  standard.

24      And, you know, the government, again, routinely, they

25  just want to create the situation where there's just --

1    basically they want to tell the Court there's no way to release

2    someone who is charged with this type of offense.  That's just

3    not what the law is, Your Honor.  But, we are still supposed to

4    be looking at what conditions can reasonably assure somebody's

5    release.  And, you know, there have been people who -- with

6    these types of allegations that have been released -- I was

7    actually just speaking to one -- one of my colleagues and this

8    person has been out for over a year now and there have been

9    no -- no issues whatsoever, Your Honor.  So it is possible to

10   release somebody with these types of allegations and not have

11   any issues in the community.

12              THE COURT:  Okay.  Yeah.  Ms. Blackwell, go ahead.

13              MS. BLACKWELL:  Thank you, Your Honor.  If I could

14   just highlight a few points.  First, I believe the defendant

15   actually admitted to the receipt of the child pornography.

16   Second, as I alluded to previously, the agents were very

17   quickly able to identify, you know, very graphic videos on his

18   phone and then the Google Drive, just within a few minutes of

19   the search warrant.  Obviously, they seized a lot of devices.

20   We won't know the full extent of the forensics examination of

21   those devices for a little bit.  But, you know, even from just

22   the preliminary cursory review, those are quite graphic in

23   detail.  And I have -- you know, believe the government will --

24   obviously, be well able to slow the receipt of child

25   pornography in this case, entitling it to the presumption.

1          I have not heard any facts given by the defendant's

2     attorney that would suggest that presumption has been overcome

3     in this case.  Congress decided to make these statutes and

4     these felonies within the category that was deserving of the

5     presumption.  I believe the government has well laid out its

6     case based on the evidence, why it is entitled the presumption

7     of dangerousness in this case and why there are no set of

8     circumstances that could protect the community in this regard.

9          I will further note that this group with which the

10    defendant is associated has avoided law enforcement detection

11    for a long period of time and it was only because law

12    enforcement was able to break into this group that it was able

13    to get this lead, leading us to Mr. Glover.  So that does raise

14    concern as well, that they were able to hide under the radar

15    for that period of time.  And, again, contributes to why we

16    believe that there's not a set of circumstances that would

17    guarantee the safety of this community for this defendant.

18    Thank you.

19          THE COURT:  Okay.  Thank you, Ms. Blackwell.  So

20    Mr. Glover, I have to rule based on four factors that I

21    consider.  The nature and circumstances of the offense, the

22    weight of the evidence, the history -- your history and

23    characteristics, as well as the danger to the community.

24          I will say that I think Mr. German has made some

25    interesting points.  I think, frankly, they're very persuasive.

1    There has to be circumstances where -- all that matters is the

2    conditions of release.  You know, that is the question, right?

3    At bottom, what are we asking?  Is there any condition of

4    release that I can fashion that can let a presumed innocent

5    person to be released?  And that, you know, even with the

6    presumption, that still -- I mean, as he said, that's something

7    that they can answer back and that does not in any way, even

8    with the presumption, mitigate, doesn't reduce the fact that

9    you're presumed innocent.

10          And so I'm just trying to understand the conditions

11   or combination of conditions of release that I can consider

12   that would be effective.  I don't think that your -- although

13   I'm not even considering the one third-party custodian,

14   Ms. Contee, who has the young children, I just think -- I

15   understand that she might be comfortable, but I am not.  And so

16   I'm considering Mr. Shawn Contee, who I don't really take into

17   account his decade-old arrest.  So, I think -- he doesn't have

18   children in the residence.  So then I'm just trying to think

19   about what are the conditions or combination of conditions?

20          I get what Mr. German is saying.  I mean, I think

21   he's right that they cannot simply be a de facto.  That means,

22   you know, by law there's no crime that you have to absolutely

23   detain somebody.  It can be a presumption, but if every time I

24   detain somebody on it, then it starts to feel like it's not

25   even a hearing, it's sort of a forgone conclusion.

1        So then I'm just struggling, trying to understand,

2   you know, every offense, there has to be groups of people --

3   and there should be data, you know, to support my decision.

4   I'm not just saying that there's people that I release for

5   every offense.  Surely there's not an offense where one

6   would -- where people can just not be released.

7        So, I spent a lot of time thinking about this when I

8   saw the detention order.  I read the letters of support that

9   came in in your support.  I'm sure that you would get more, as

10  Mr. German indicated, but those do speak highly of you.  But

11  also, I mean, the conduct that is there is -- albeit it's an

12  allegation, there's a real concern as to danger.

13       So here's how I rule:  I'll go through the four

14  factors and explain each one.  I think, you know, as I go

15  through them it will be -- if there is one just unifying

16  thread, is my concern about the conditions of release.

17  Unfortunately, I do believe detention is appropriate here.  I'm

18  sorry, Mr. Glover.  That is my decision.  That I find to be

19  very challenging because I think Mr. German makes some very

20  good points, is that can't I just find some conditions or

21  combination of conditions?  And I really -- I want to believe

22  that, you know, that there are opportunities to do that.  I've

23  just -- I'm struggling to see it here.  And, so, to begin with,

24  I'll start out with the nature and circumstances of the

25  offense.

1           The nature and circumstances of this offense is one

2    where there are -- allegations are very concerning.  It

3    involves infant and toddler conduct and penetrative conduct.

4    And so, because of that, I do believe that that is something I

5    think about in terms of the type of conduct is within the

6    universe of child exploitation conduct, it is some of the most

7    troubling conduct and it is quite graphic.  It is not just mere

8    nude images.  It actually is allegations of penetration.  And

9    that, you know, this was seen also on the day of the arrest and

10   search warrant.  And so that is -- and the volume of content,

11   it's not merely one video or one still image, it appears to be

12   quite a bit, even as it's only the forensic review's beginning.

13           In terms of the nature and circumstances of the

14   offense, this is some of the most troubling conduct, it

15   involves the most vulnerable population, and things that are

16   being done to them that is disturbing.  So for that reason I

17   think the nature and circumstances of this offense is

18   concerning and sufficiently violent and such that I think that

19   it weighs in favor of detention.

20           The weight of the evidence, to me, is the least

21   important category.  I do think the weight of the evidence is

22   very strong, unfortunately, against Mr. Glover.  Although he's

23   presumed innocent, there are statements that he made -- it

24   appears forensic review of the materials confirms this -- there

25   is the pre-investigation that led to the search warrant that

1    reveals why they were able to get into the house, how they

2    had -- you know, they were able to get search warrants that

3    were tied to his name, ZEMA account, and all these things

4    reveal child exploitation materials.

5           In terms of history and characteristics, I think this

6    weighs in favor of release.  I think that we cannot say enough

7    about Mr. Glover; the fact that he's held a job, he's helped

8    other people get jobs in the government.  I want to be very

9    clear, there's no indications that he's anything other than a

10   good father.  I think what Mr. German said made sense.  I

11   appreciate that clarification, because I was concerned before.

12   It sounds like he's been a great dad and he's very concerned

13   about his children.  And, you know, as a father myself, I'm

14   very -- it's very challenging for me in this situation, to sit

15   here and make this order, understanding that I am separating

16   Mr. Glover from his children, which is something I could not

17   imagine.  And I do apologize to you, Mr. Glover.  I'm sorry to

18   do that, especially on your son's birthday.

19          So, I look at the history and characteristics of the

20   defendant and I think that it weighs in favor of release.  I

21   understand the government's point that this conduct may have

22   gone on for a while, but he's presumed innocent for this

23   conduct and they didn't get him before then.  So without -- I

24   mean, I looked at prior criminal history as a major issue in

25   the history and characteristics, and so that weighs in favor of

1   release.

2          So, really, here, it is, in my mind, a question of --

3   at this point it would still be -- I think that if I could find

4   some conditions that mitigate my final concern, which is

5   dangerousness, and that's ultimately what I think tips the

6   scale in favor of detention.  I get to dangerousness, I think

7   there is a danger, an articulable danger to the community, as

8   seen in the *Munchel* decision.  I'm concerned.  The detention

9   memo indicates the defendant was using an encryption and other

10  technology to obfuscate law enforcement efforts to locate them

11  and this group, was a sophisticated group that was not easy to

12  penetrate and to get into.

13          And so I'm concerned that even if he has a

14  third-party custodian who is, 24-hours-a-day, monitoring the

15  house, that the nature of this crime is that it is fueled by

16  people who are -- it's a supply and demand, and as long as

17  there is a demand, that fuels the supply.  There's case law

18  that corroborates that.  What I'm concerned with here is

19  that -- I agree with Mr. German, is that there's a difference

20  between someone who views images and produces content.  And I

21  understand, and in fact struggle with this, as to when the

22  government doesn't charge the mandatory minimum charge, then I

23  often say in my detention hearings, well, there's no rebuttable

24  presumption.  And so I feel like I'm putting the government

25  into a situation where I don't want them to charge more serious

1    offenses so that they'd make the detention decision easier, but

2    then make the case a negative for Mr. Glover, who faces a

3    mandatory minimum.

4              So I don't have an answer for that.  Probably it

5    would fall, Mr. German, under the very large category of

6    things, as you describe, is the failure, at worst, and, at

7    best, major problems with the criminal justice system.  I don't

8    know how to address that.  But I have to address the charges as

9    they are in front of me.

10             There is a presumption of detention, I think for a

11   reason, is that there is a documented danger here.  And the

12   danger is that with a cell phone or even a smart device of any

13   kind, a smart TV, that the defendant would be able to then

14   access Zoom or Microsoft Teams or Webex or anything else and

15   could then participate in groups that are viewing child

16   exploitation material.  And so for that reason, I can't -- I

17   agree, if I could get a condition, you know, that was not

18   incarceration, then I think that I would feel very comfortable,

19   because, you're right, that if we could just cut the defendant

20   off completely from the internet and have him in a place where

21   he couldn't access children, that would be the conditions or

22   combination of conditions.  And, God knows, Mr. German got

23   about as close to that as humanly possible.

24             But, you know, I hear from pretrial that we can't get

25   that final delta, we can't get across that because there isn't

1    such technology.  I understand that pretrial is trying to use

2    computer monitoring technology, but it would not -- you know,

3    even with their pilot program that they're trying to put into

4    place, that that would not include smart TVs or other devices.

5              For all those reasons, I think -- sure, I'll come to

6    you in one second, Mr. German -- for all those reasons, I think

7    detention is appropriate here.

8              Mr. German?  Sorry.  Go ahead.

9              MR. GERMAN:  Perfectly understanding the Court's

10   decision, I just want to clarify a couple things and, you know,

11   ask the Court to reconsider, if the Court is inclined to do so.

12             I want to be clear, that Mr. Contee has no smart

13   devices.  He does not have a smart television, he has no

14   computers, no laptops, or anything of that nature.  He has a

15   cell phone.  And he is, again, obviously, by putting himself in

16   the position of a third-party custodian, he recognizes that not

17   only would he be in violation of that, but he is opening his

18   own self up to criminal prosecution, if he were to allow

19   Mr. Glover to access these devices and something were, you

20   know, to happen here.  So, I do want to make that clear.

21             And with respect to whether or not pretrial is able

22   to -- you know, has the technology to actually monitor these

23   devices, you know, my understanding is that probation has that

24   technology.  So, I don't know that that necessarily should be a

25   bar here.  If pretrial can't do it, then probation can do it.

1    I just don't know that that should just be the reason why we --

2    why we can't release Mr. Glover.

3              THE COURT:  Mr. Glover, I can put you back in a room

4    with Mr. German.  I want you to talk to him first.  I just

5    don't want you to say anything that's going to jeopardize your

6    defense.  So, I'm going to go -- Ms. Lavigne-Rhodes, if you can

7    put them back -- Mr. Glover back in a room with Mr. German.

8              THE COURTROOM DEPUTY:  Yes, Your Honor.

9              (Pause.)

10              MR. GERMAN:  Thank you, Your Honor.

11              THE COURT:  Okay.  Let's give Mr. Glover a minute.

12    Ms. Lavigne-Rhodes, if you can, pull him back out.

13              (Pause.)

14              THE COURT:  Okay.  Mr. German, was there anything

15    else you wanted to add, based on speaking with Mr. Glover?

16              MR. GERMAN:  No, Your Honor.  Thank you.

17              THE COURT:  I mean, Mr. German, you know, I feel like

18    nothing I say is satisfactory.  I mean, the fact that pretrial

19    lacks the technology of probation, that's not Mr. Glover's

20    fault, that's the system's fault, and that's not a fair thing

21    to punish Mr. Glover with.  But, I'm limited to use pretrial.

22    And, I think, moreover, pretrial has indicated that they don't

23    believe this residence is even one that I can use.

24              And so I don't -- you know, I'm sure it feels like,

25    again, just from Mr. Glover's perspective, that the system is

1    not set up in his favor, and I apologize for that.  I'm trying

2    my best to try and work within that.  And, also, where -- I

3    mean, you know, at the end of the day, it's my name,

4    Mr. German, and I'm the one making the decisions.  So I don't

5    want to make it seem like I'm passing the buck.  I just think

6    ultimately -- I understand your point, you know, Mr. Contee

7    doesn't have a smart device.  I just am concerned and remain

8    concerned that it is easy to come by one.  And I understand

9    that he is opening himself up to liability, potentially, by

10   doing that, but I -- I just -- I don't know, I'm not -- I don't

11   feel comfortable in a position that I can rely on him to be

12   that 24-hour guardian to prevent -- I mean, this is just --

13   this is a -- feels like an intractable problem, where we need

14   to catch up so that the defendants can have their

15   constitutional right to be on pretrial release.

16          But we're not able to monitor the internet because

17   the internet now is everywhere, and that when people are

18   committing crimes that way, that's not a fair thing to then say

19   that's the bar to get over, and we don't have that ability.

20   And it's not pretrial's fault.

21          I want to be clear, Ms. Holman.  I'm not saying

22   anything critical of you or your staff.  And I know how busy

23   you're working and how hard you're working, and monitoring way

24   more people than possible.  So I appreciate everything that you

25   do.  This is just a systemic problem that is much larger than

1    anybody, but that's not fair to Mr. Glover and I'm sorry.  But

2    that's where I am right now.

3              So ultimately that's my determination that I will

4    issue, a detention order.

5              Ms. Blackwell -- I'm sorry, Ms. Lavigne-Rhodes, do

6    you know if we have a next date in this matter?

7              THE COURTROOM DEPUTY:  We have to set one, Your

8    Honor.  This is still a magistrate case.

9              THE COURT:  Okay.  Mr. German, do you want to pick a

10   control date?  Are we ready for preliminary hearing?  Do you

11   want to set that on the books for just two weeks out from

12   yesterday?

13             MR. GERMAN:  Your Honor, there are a couple moving

14   parts with that and I would like some time to speak with

15   Mr. Glover.  Unfortunately, I don't know that he's in a

16   position to discuss that.  I think, at this point, recognizing

17   that there have been conversations with the government about

18   how to proceed forward, I think it makes sense to set a

19   two-week preliminary hearing date and then if that changes,

20   we'll go from there.

21             THE COURT:  Okay.  So I have that October 6th.  Is

22   that right, Mr. German?  That's what I gather from yesterday.

23   Is that when I saw Mr. Glover first, I think?

24             MR. GERMAN:  Yes, Your Honor.  That would be

25   accurate, I think.

 1          THE COURT:  So, Ms. Lavigne-Rhodes, can you give me a

 2     time on October 6th?

 3          THE COURTROOM DEPUTY:  October 6th before Judge

 4     Meriweather.  She can do -- she's pretty open.  So we can do

 5     2:30.

 6          THE COURT:  Okay.  Mr. German, 2:30, are you

 7     available then?

 8          MR. GERMAN:  Yes, Your Honor.

 9          THE COURT:  Ms. Blackwell, are you able to just relay

10     it to Ms. Russo?  I assume it will be her, but if not, you or

11     one of your colleagues.

12          MS. BLACKWELL:  I will do that, Your Honor.  Thank

13     you.

14          THE COURT:  Okay.  Anything else from your end,

15     Mr. German?

16          MR. GERMAN:  No, Your Honor.  Thank you.

17          THE COURT:  Ms. Blackwell, anything from your end?

18          MS. BLACKWELL:  No, Your Honor.  Thank you.

19          THE COURT:  Thanks so much.  Ms. Holman, anything on

20     your end?

21          PRETRIAL SERVICES:  Nothing, Your Honor.

22          THE COURT:  Thanks so much.  The parties are excused.

23          Good luck to you, Mr. Glover.

24          Mr. German, I don't know that it matters, as you

25     said, if you want more time now, is that going to be helpful?

1          MR. GERMAN:  No, Your Honor.  Thank you.

2          THE COURT:  Okay.  Sorry.  Thank you.

3          MS. BLACKWELL:  Thank you, Your Honor.

4                          *   *   *

5

6

7                       CERTIFICATE

8     I do hereby certify that the foregoing is a true, correct

9    and complete transcript of the audio-recorded proceedings in

10   this matter, audio recorded on September 23, 2021, and

11   transcribed from the audio recording to the best of my ability,

12   and that said transcript has been compared with the audio

13   recording.

14                       Dated:  December 17, 2021

15

16                       /s/_____
                         Janice Dickman
17                       Official Court Reporter
                         333 Constitution Avenue
18                       Washington, DC  20001
                         202-354-3267
19

20

21

22

23

24

25